Would the attorneys who are going to argue the case please approach the bench, identify yourselves for the record, and advise the court of how much time you would like to argue your respective positions. Good morning. My name is Carrie Fetzko and I represent the plaintiff appellants Connie Foley, Calvin Drew, and Raymond Hayes. I request 15 minutes for direct and reserve 3 to 4 minutes for rebuttal. What's your name again? Carrie Fetzko. Spell that please. Sure. First name Carrie, K-E-R-R-I. Last name Fetzko, F-E-C-Z-K-O. Thank you. Thank you. Good morning. I'm Assistant Attorney General Ann Mascaleras representing the appellee, the director of the Department of Corrections this morning. How much time would you like? However much the court wishes, 15 minutes. Fair is fair. Okay. Alright. Very well. Ms. Fetzko. Good morning, Justices. May it please the court? Plaintiff appellants here, all retired law enforcement officers, are seeking a writ of mandamus compelling the director of the Illinois Department of Corrections to complete a retirement verification form, which I'll refer to as Form 3, on their behalf. You said that they're all retired law enforcement officers. Isn't that one of the questions at the heart of this case? It is, whether they are qualified law enforcement officers. That's the issue, isn't it? It is, and I'll go into a little more detail of how they fulfill all those requirements. So, and as I'm sure you're aware, this case is particularly layered and very acronym heavy, so I'm happy to lay out the structure if any confusion may arise, but I'm sure you're very familiar with the facts of this case, so I'll just press forward into that major point as well. But first, I'd like to direct your attention to the most recent decision of the District of Columbia circuit. They recently handed down a case on June 3rd, which directly addresses LEOSA and its effect on retired law enforcement officers, and that's Dewberry versus the District of Columbia. And appellants did file a motion for leave to file supplemental authority on June 13th. Because this did come down on June 3rd, it obviously came down well after appellate briefing had wrapped up for both parties. And this case, in particular, reverses and remands a district court case that defendant appellees relied heavily on in their response brief. What's the citation? I can give you the case number, which is 15-7062. But in that case, couldn't the court specifically say that the issue of discretion is not before the court? So it had nothing to do with discretion. It did touch on the elements of discretion. But it said we are not deciding the issue of discretion, which is the issue in this case. And it wasn't a mandamus case, was it? No, this was a 1983 claim. So I don't understand the relevance at all. Because it does discuss LEOSA and how it creates a right to conceal carry, and that's one of the major points. But that's not an issue. Of whether it creates a right to conceal carry? That's one of the many arguments. Let's assume the federal law allows it, right? Sure. Well, in the Stewberry case, it does mention that LEOSA set out a requirement in historical and objective terms. So it actually does state that these are objective terms, leaving no room for redefining by the state or any kind of re-evaluation by the state. Well, if that was true, then they wouldn't say that they were not deciding the issue of discretion. I mean, that kind of can't carry to what they said on page 13. On page 13. And it may not have been a direct issue before the court, but I think it does carry some persuasiveness. Well, it's not persuasive at all. First of all, it's not from Illinois. Well, sure. But I think, you know, the Illinois courts and the Seventh Circuit have seldom litigated LEOSA and how it affects state law. And I think the D.C. court is particularly important, and I think this directly addresses several of the arguments. Well, it seems like your argument is my client is a law enforcement officer. Yes. Who wants to carry a gun across state lines in compliance with federal law. In order to do that, his or her former agency needs to sign a form. Correct. And the director of the former agency refuses to sign the form. Correct. And you think mandamus lies to force the director to sign the form. I do. Tell us why. Okay. And I don't think this is a case of asking the director to use his discretion in a particular way. I think the case is refuting the fact that the director had any discretion in the first place, because signing form 3 is just a verification or certification that they were a law enforcement officer. And who declared your clients a law enforcement officer? Well, that's how they were employed, was law enforcement officers. By statute, they're defined as that? Yes, they're defined as peace officers, which goes into the act as a law enforcement officer. Okay. Is there a difference between a peace officer and a parole officer? No, there's not. Those apply both to any type of corrections officer. And it makes clear that LEOSA and the Illinois state law wasn't only to apply specifically to police officers. It was to apply to, you know, the wide gambit of corrections officers, even those with limited jurisdiction, such as this one. And the purpose of it was to protect these former law enforcement officers from vindictive criminals who they may run into later in life. Now, what form 3 are we dealing with? When we discussed this case amongst ourselves, I showed my colleagues form 3, which was in the record as A48. And Justice Hyman had a different form 3 and identified as stamp A136 in a completely different forming. So is it the same form? It is essentially the same form because basically what it does is it restates the LEOSA conditions of how to qualify for a law enforcement officer or a retired law enforcement officer. Well, if I'm the director and I read that A definition and I disagree with that, or I disagree that the applicant doesn't fit my interpretation of that definition, why should I be compelled to declare this a ministerial act and I should sign it? Because as the director, statute doesn't grant you the authority to use your discretion or interpret the law. And that's given expressly to the board. They make that decision of where they fit those requirements. They make the decision of where that application as a whole qualifies you as a retired law enforcement officer. Well, the form I have, A48, also says that I'm certifying that the applicant is not under the influence of alcohol or intoxicating or hallucinatory drugs or substance. How would I know that? And I think that's one of my points is that if any part of that was to be discretionary, it would be that part. But if you look at all the other conditions, all of them can be answered simply by looking at the individual's personnel file. There's no personal deliberation needed. There's no personal judgment required. This is just a certification or, you know, verification. So you're conceding that there is some discretion? Only in that. Well, if there is discretion, then mandamus is up, right? There can't be any discretion. I think as a whole, though, it's verifying. No. How is that person going to be? You even said that is discretionary. Well, if anything is discretionary, it would be that one. But that's not what's at issue. That was never an issue that was in counsel brought up. It doesn't matter if it's an issue. If it's a discretionary call, the mandamus doesn't apply. You even conceded that in your briefs. Well, if it is. If there's any discretion involved. But I don't believe that there is, and that is a concern. But you said there is any. That looks like a discretionary call. How would that not be a discretionary call? Well, that's what the Dewberry decision says, that all requirements are laid out in historical and objective terms, leaving no room for discretion. No, it doesn't say that. Because it said when I'm not deciding the issue of discretion, it specifically says that, paragraph 13. Or page 13. All right. We don't want to eat up all your time. Sure. You applied, so why don't you proceed with your argument. Sure. And that's the other two points I wanted to make. I realize that the act of discretion versus ministerial is largely semantics. But, again, I'm going to reiterate that. What do you mean by semantics? I think it's a lot of determining whether certifying or verification is discretionary. And I think there's a lot of semantics that go into that. I think mostly the argument is personal deliberation versus checking a box yes or no. And we're arguing that certification or verification, there is no personal deliberation. It's objective. It's looking at the personnel file. It's purely ministerial. And that's why mandamus is appropriate. Are you aware of the statute that requires the director to sign the school? It requires the director to cooperate with the board and furnish all documents necessary. No requirement that they sign. For example, there is a requirement that a clerk file a document. Look at mandamus, that act. He doesn't have any discretion. He doesn't have to look at it or list those files. But counsel, with all due respect, with respect to this form 3, the person certifying the information has got to review it and make some determination, which is where the discretion comes in. Would you agree? I don't because I also think the director and the Illinois Department of Corrections also stated we're not going to furnish this document, this form 3, for any people in the future whatsoever. And so now they're saying we're not going to furnish it at all, whether it's sign it or not. They said we're not going to furnish it whatsoever. Did they give a reason for that? Not that I'm aware. And they furnished at least, you know, 14 to 15 in the past, but now they're making some kind of policy reversal, stating that they're no longer going to furnish these form 3s. Would you suspect it's because they believe that the people that are trying to get this form signed were not law enforcement officers? I don't know. I can't speculate on why they refuse to do that. But if they do believe that these people do not qualify as law enforcement officers, that's not up to them. That's up to the board reviewing the application to determine that. And they determine whether they're granted the concealed carry. Isn't it a chicken and egg? In other words, the board wouldn't consider the application until all the forms are filled out and submitted for them to consider whether to grant the application. They do need the full application. Right. So if the Department of Corrections is not going to sign the form, I can see the issue of why not, okay? And I can see why somebody would say, well, you're required to sign it. I can also see the department saying, why should I sign a form that says the applicant is not prohibited by federal law from receiving a firearm? How would I know? Well, it's also based on their incorrect interpretation of the law. So not only are they acting using discretion where it's not granted to them, but they're reviewing it and it stems from their inaccurate redefinition of the law. They're saying, well, we don't think these people qualify as retired law enforcement officers. Why is that? We don't think they hold the statutory power of arrest that they had when they were employed and all of a sudden they're retired and they no longer have it. Their interpretation of that is erroneous, and so they're preventing these plaintiff appellants from receiving their right to concealed carry based on an erroneous interpretation of the law using discretion they weren't granted in the first place. If it's erroneous, then shouldn't it have been a declaratory judgment action? Mandamus won't apply if you're saying it's erroneous. You have the wrong cause of action. And that's what we're also asking in the alternative. Did you make that request before the trial court? No, we did not. It was only on appeal that you made that request. That is correct. What about the federal law, LEOSA? Doesn't it grant to the states the authority to determine if a person is within definition of a law enforcement officer? Yes. That determination is to be made by the state. It's a determination. Sure, yes. But isn't a determination when something has to be decided? Yes, and that's granted to the board. But that discretionary, that depends on this form, which says whether or not the department considers the person a qualified retired law enforcement officer. So LEOSA did give the states the discretion to decide who was going to be a qualified law enforcement officer. And the Illinois state decided, okay, we're going to use the same conditions that are set out in LEOSA. They almost mirror exactly those of LEOSA, but they had those discretions to add additional preconditions, qualifications. That's where the discretion lies in determining how, what kind of conditions these individuals must meet in order to become a law enforcement officer, or a retired law enforcement officer. Illinois used that discretion to say, okay, we're going to set out this list of conditions. That's where discretion was used. And then the board, in turn, has discretion to review it and decide ultimately whether they meet those conditions. But the director's process was only in certifying that they were employed as a law enforcement officer. So I would be incorrect to understand the statute to say that the state has authority to determine if a person meets the definition, but that's not within the purview of the Federal Act, right? They can't determine whether a person meets it. They can only put down the, they only have discretion. Well, no, the board has discretion ultimately to decide whether they meet it, but that's given to the board and not the director of the Illinois Department of Corrections. But the director is saying whether or not, I don't see how you can jump from the board and forget about the form. Isn't the form a basic for the board to make that determination? The form is just a yes or no. I mean, it's no personal deliberation. You look at whether they were employed as a law enforcement officer. Right, and what is a law enforcement officer? And you just said one of the arguments is that they weren't law enforcement officers. Right. But that's not their job or duty to interpret that. It's not. It's not their decision. That's their certifier verifying, did they work for you? Were they employed with you? Yes, they were. As such, they were a law enforcement officer. Did they have the statutory powers of arrest? Clearly, they did. As parole officers, they carried a gun. They had the powers of arrest. And it was only now once they retired. Who designed form number three? The state or the federal government? The state. The state. Yes. Okay. We've taken a lot of your time. We'd like to have everybody fully tell us what they'd like to tell us so we can go further. Sure, and just briefly touching on the declaratory judgment piece, we are asking the court to permit plaintiffs' leave to amend their complaint to add a declaratory count upon remand. Whether to grant or deny that is within the court's discretion, but typically it has been granted unless it's apparent that no cause of action exists. And I think the Dewberry Court does acknowledge that a cause of action does exist because there is a right to concealed carry and there is a duty to the state to follow those requirements. And I think it would be in the best interest of justice to require such an amendment if an alternative mandamus is not available. So if there's no other questions, I'll address any other arguments that come up on rebuttal. But we are asking the court to consider the points that are addressed in the D.C. Circuit's Dewberry decision. And I think it's one of the few federal cases that directly addresses the provisions of LIOSA. And we respectfully request that this court reverses the lower court's decision granting defendants' motion for summary judgment, reverse the order denying plaintiffs' motion for summary judgment, and issue a writ of mandamus or alternatively a declaratory judgment. Thank you. Thank you. Ms. Mascaleras. Good morning, and may it please the court, Assistant Attorney General Ann Mascaleras for the drafter of the Department of Corrections. The issue before this court is a narrow one. It is only whether a mandamus was an inappropriate procedural vehicle for plaintiffs to get the relief that they wanted. Mandamus is an extraordinary and very limited procedural vehicle used only to compel a public officer to perform a nondiscretionary ministerial duty. The issue before this court is not if these plaintiffs met the definition of a qualified retired law enforcement officer under LIOSA or should be categorized as such on Form 3. And the issue is not the propriety of some other procedural vehicle, either to review the drafter's decision not to certify these plaintiffs or to seek the relief plaintiffs want, because plaintiffs chose to stand on their complaint for mandamus relief and at no point request relief to amend their complaint or tender the proposed amended complaint asserting a completely different cause of action. The circuit court's judgment should be affirmed. In their complaint for mandamus relief, plaintiffs sought an order compelling the drafter to, quote, verify that all requirements encapsulated by Form 3 have been met as to each individual plaintiff. That is, plaintiffs sought an order compelling the drafter to complete and certify, under penalties of perjury, Form 3 in their favor. But mandamus cannot be used to compel the drafter to so conclude for two reasons. First, the drafter exercised his authoritative discretion in not certifying the plaintiffs when he determined that they did not meet the statutory eligibility requirements because they did not have the requisite statutory powers of arrest under Illinois law and LIOSA. And two... But what is that one of the criteria under the definition, under your Form 3, the law form? The question is, does qualified retired law enforcement officer means an individual plea? Okay? Right. So let's go through, if you go through each of those... Right. Where is, what you just said, is that one of those? It is. So if you go, so what you just read me was a dot under definition. Right. And go two dots down and to the paragraph that talks about before separation, there's also, and had statutory powers of arrest. It's the second line from the bottom of that bullet-pointed paragraph. So the drafter would have to make that determination. If it didn't have that kind of power, then he or she wouldn't be able to sign it. That's correct. Amongst the other ones, as the court pointed out during questioning, is now currently not federally prohibited from possessing a firearm, is not now under the influence of drugs or alcohol. All these things. The board, the Illinois Law Enforcement Training and Standards Board, established the concealed carry program for retired officers. They came up with the application process and processed these applications and have ceded authority to the drafter to make this determination via their form 3. So you're saying that the board ceded their authority to the director of the Department of Corrections to determine that the retired applicant isn't under the influence of alcohol. How do you do that? How does the drafter do that? Yeah. The drafter doesn't think that he could do that because these are all retired officers. So isn't the bureaucracy setting up a condition for arbitrariness? Why wouldn't the board make that determination themselves by saying, applicant, submit some proof that you're not under the influence of alcohol or drugs? Why would you put that onus on the Department of Corrections to say that some retiree that the director probably never even met, wouldn't even know existed, but for trying to carry a gun to Missouri, is not an alcoholic or a druggie? I mean, I think what the board has implemented or is charged with implementing in this state, and so the board has required the drafter, as the prior employer, the board was not the prior employer of these individuals, as the prior employer, to certify whether these LEOSA requirements were met. And another point that plaintiffs continually mention during their argument is, if the board had this authority, then maybe the plaintiffs sued the wrong party. If they're talking about what the board should have done or what the board should have done on the application, this complaint for mandamus relief was only against the director of the Department of Corrections and not the board. Why don't I go back to Chris's question. Couldn't the director easily sign the form with regard to alcohol and tobacco to being under the influence issue because there's Form 2. And Form 2 is signed by the applicant. In Form 2 specifically we ask the applicant to affirm that I am not under the influence of alcohol or other intoxicating or hallucinatory drug substances and so forth. And that's signed under penalty of perjury. Form 3 is, like Form 2, is true to the best of my knowledge, information, and belief. So there is a basis for the director to say that they're not under the influence of drugs because of Form 2. So you're saying that perhaps the director could rely on the affidavit or certification of the applicant? Absolutely. Yes. And that way they have that? To that extent, if they could do that, I don't know that the director gets that Form 2 of the application. I don't know either way whether the director gets that. I will say in this case the director denied certifying these plaintiffs on Form 3 because he used his authoritative discretion to determine that they lack the statutory powers of arrest. Right. And as to that, counsel noted that she didn't know the reason. Was there a reason given to the applicants? So it was communicated to the board. So what happened was the board had received multiple applications from multiple retired parole agents, parole officers of the Department of Corrections. Those persons counsel had referred to that the department had signed Form 3 for some of these persons. Actually, the department informed the board that those applications that had been signed for those persons were signed by persons of the department that did not have the authority to sign Form 3. What happened was these certain applicants went to basically their home office, their regional office, as parole officers went to the HR department and asked them to sign Form 3 on their behalf. The department communicated that to the board and said that they would not process Form 3 for retired parole agents or parole officers because those folks lack the statutory powers of arrest, and therefore the department and the director exercising that discretion refused to sign Form 3. And that was all communicated to the plaintiffs? To the board, and then I think it's the board because the board processes the application. The board then communicates to the applicants. Now, here the board never ruled. There's nothing in our records showing the board made a final ruling on any of these applications. They just said that they couldn't process the applications because the department or the director of the department would not certify Form 3 in their favor. But in the trial court, the issue that you state, the fact about the law enforcement officers' authorities, that was the issue below, too. I mean, it wasn't the issue of alcohol or any other. Right, right. So the director denies. There was some way that the parties knew that that was an issue. I think that you're right. I think that you're right. Yes, I think that that had to have been communicated some way, that it was the lack of statutory powers of arrest. The parole officers don't have the authority to arrest? The statutory powers are under Illinois law in the Code of Corrections, and it said that they have a statutory power to arrest those parole – it's called mandatory supervisory release now, but I'll just use the term parole – parolees who they believe are committing a crime. And so the directors, in exercising his discretion, determined they do not have a general statutory arrest power as a police officer would, that they could only possibly have this very limited power to arrest parolees  So if a parole – person on parole is violating his parole by not going to work, for example, that would be a parole violation, perhaps, right? Okay. And the parole officer finds this out, he – it's not a crime not to go to work, but it's in violation of his parole, how does he apprehend or take that person into custody? Under what authority? If he is given – if a parole agent is given authority under Illinois statute, and their powers of arrest would be by Illinois statute under the Code of Corrections, then that's a very limited power of arrest, not the power of arrest that the director decided that they had to have to qualify under LEOSA to carry the concealed firearm. Does it make a difference that in the affidavit that Mr. Curry filed with the motion for summary judgment, he also points out that there were restrictions pertaining to off-duty firearm use, and he says coupled with their limited power of arrest. There are a couple of things. So they can use their gun, or they can be in possession of a gun three hours before and three hours after work. Is that what it is with these parole agents? The parole agents, I think there was some dispute during the summary judgment briefing below as to whether these parole agents carried weapons during their employment, had the authority to carry weapons during their employment, didn't, and what those terms were. But that issue isn't relevant to determining whether the director, you know, whether the director had the discretionary authority to determine whether they were qualified retired law enforcement officers. The only reason I ask that question is that that was part of his affidavit that was submitted with the motion. But you're just focusing exclusively on their limited powers of arrest. Right, right. What about Dewberry? What's your response? Dewberry, the recent decision by the D.C. Circuit was a very limited holding. It held that Leosa confers upon a specific group of individuals a right of the deprivation of which is remedial under Section 1983. The court held that those plaintiffs stated a claim under Section 1983 because Leosa established a federal statutory right remediable under 1983. That's it. Dewberry did not hold or say that a former employer or their director does not have the discretionary authority to determine if former employees meet Leosa's statutory requirements. It wasn't a mandamus action. It did not say that mandamus is a correct procedural vehicle to seek the relief that plaintiffs sought here. It did not say that every applicant has a clear right under state law mandamus to certification or classification as a qualified retired law enforcement officer, which is what the plaintiffs claim here. It didn't weigh in on the merits of the issue. It didn't conclude whether statutory powers of arrest was a question of law or fact, and it didn't say whether in that case the conclusion by the D.C. Department of Corrections statutory powers of arrest there was right or wrong. It's a very limited holding that doesn't apply to this case. Now, plaintiffs, I think, attempt to apply Dewberry to this notion of a clear right to relief in the mandamus context. The point is that plaintiffs are trying to take a federal right sufficient to state a 1983 claim and impose that as a clear right to mandamus relief under state law. But that doesn't work. Those are two different things. And here, plaintiffs conceded in their reply brief at pages 6 and 7 that they're not asserting and not attempting to assert any type of federal right. So it seems that they're choosing not to pursue that route. I would like to comment the Court has asked questions, and plaintiffs brought up different causes of action, maybe, other than mandamus relief. Mandamus certainly isn't available. And now we have Dewberry, but here, again, plaintiffs conceded in their reply brief that they're not bringing a federal right claim, and so they disavowed any notion that they seek relief under Section 1983. There's been talk of declaratory judgment actions, but that's not an appropriate procedural vehicle, either to seek review of the director's refusal to certify plaintiffs on Form 3, and a court should not determine whether plaintiffs are qualified retired law enforcement officers via a DEC action. The director still asserts, even in light of Dewberry, that plaintiffs lack any enforceable rights subject to determination in a DEC action because plaintiffs have no right to obtain from the director a certification that they are qualified retired law enforcement officers. And now we have Dewberry. Wouldn't the nature of a DEC action be? Excuse me? Wouldn't the nature of a declaratory judgment action be, I am a retired parole officer. Under state law, I had authority to effectuate an arrest. I had police powers. Declare, judge, declare that I am, or under the terms of the statute, I was a peace officer. Isn't that the nature of a declaratory? You know, the director can take the position, well, I don't think they were, and then that's what the evidence would be before a court, and then the court would decide based upon the evidence from the director and based upon the evidence from these other witnesses, I find that they were or were not peace officers as defined under the act. Isn't that the nature of it? That's what a DEC action does, but usually a declaratory judgment action is used to settle a controversy before it ripens into a legal liability, but it's not used to review or undo a prior agency decision. It's not used to attack or review an agency decision or an administrative action as to whether an applicant or someone seeking relief from an agency met statutory requirements. An agency, given the power to make such a decision, decides that in the first instance, and then that judicial review, if it can be sought from those types of decisions, can percolate up, but not through an original declaratory judgment action. And here, any declaratory ruling wouldn't necessarily end the proceedings on the plaintiff's applications, because the board still would have to rule on the plaintiff's applications. And again, we have Dewberry, but its declaratory judgment action is not used to resolve a claim of a federal right asserted under Section 1983, and that might be the case I'm hypothetical Your Honor posed. If there are no further questions from the court, I would ask that the court affirm the circuit court's judgment in favor of defendants. Thank you. Ms. Pesco, briefly. First, I just want to briefly address opposing counsel's point about the statutory power of arrest, which is one of the main reasons why they believed plaintiff appellants did not meet the requirements as a retired law enforcement officer. And the fact of the matter is the question was whether these individuals carried guns during their job, whether they carried guns off-duty, and in fact they did. Connie Foley was required to carry a firearm 24 hours a day, and as parole agents they were often required to carry a gun off-duty as well as on-duty, so they had that statutory power of arrest while they were employed. It only recently became an issue once they became retired law enforcement officers, so they did hold that statutory power of arrest. And as far as rejecting, signing, or furnishing any Form 3s in the future, I'm not sure how that applied or if that was communicated to us about the prior 15 Form 3s that were furnished. Connie Foley was one of them who initially received a Form 3 that was signed by an employee of the Department of Corrections Human Resources Department, and it was sent back saying that this was not the proper person to furnish that Form 3. He received that rejection and said okay, and that's when he went to the director for the Illinois Department of Corrections to fill it out instead. So I'm not sure, and as far as I know that only applied to Connie Foley, not the rest of the plaintiff appellants, and I'm not sure how that applied to other applicants as well, but it certainly only applied to Connie Foley, and he worked hard to remedy that. And we are not saying, as opposing counsel may have hinted, that we may have sued the incorrect defendant, that maybe this should have been more properly directed towards the board. We're not saying that the board failed to do something or did something incorrectly. The crux of the complaint is that defendant failed to comply with statutory requirements by refusing to furnish Form 3. Our dispute is not with the board itself. And I think as far as the declaratory action, it has been granted before even after plaintiffs failed to bring that up at trial court and even in their appellate briefs in the interest of justice, so we still request that as an alternative remedy. What would your position be if the director had signed this form and said, I will not certify the foregoing, signed it, and submitted it? Saying that he will not sign it, that he will not certify it, but submitted it anyway. I'm being asked to sign this under oath. I will not sign this under oath because I cannot certify the foregoing, director so-and-so. Now what? I still don't think the statute grants him the power to do that. It's just to certify. It's not to interpret or redefine. It's for the board to see that the applicant meets all requirements for a qualified law enforcement officer. I would still say he doesn't have the statutory power to do that. It seems that this morning there's a dispute over what, which is the first question I ask you, you know, what is a law enforcement officer? And you've come back and said that they had limited ability and could carry guns all day and all these other things. But that's a dispute. I mean, that is not clear whether these people are or are not law enforcement officers. That's the crux of the whole issue. And since there is a question on that, mandamus, then what apply? Well, I believe the crux of the issue is, you know, whether or not, not necessarily whether they are a qualified law enforcement officer, which the lower court agreed that they were, but it was whether the director had any power to exercise that in the first place. Not necessarily whether or not they do qualify. If that were the issue, then the lower court who agreed and said, yes, they do qualify, it would have been the end of that case. But that wasn't an issue directly before us. Aren't there some questions that have to be resolved beyond whether or not they're law enforcement officers? I mean, the questions about whether or not they're using alcohol, the questions about the status of their health. There are a number of other things that have to be determined beyond the question of whether or not they're law enforcement officers or were law enforcement officers. Do you agree? I agree. All those other things that discussionary counsel are most respectfully submitting. Somebody's got to determine that. They've got to make a determination. Then you're exercising this question. But that was never a question. That was never brought up. That was never the act in question. The issue was whether they had the discretion to do that. They didn't argue that, well, we can't certify this, we're not going to furnish this, because they're under the influence of alcohol. That was never an issue brought up. That was never argued by opposing counsel. But the director said I'm not going to sign this, apparently, because they're not law enforcement officers. So you're saying that doesn't matter. You have to sign this form anyway. That doesn't really make a lot of sense to us. What would be the board's purpose, then, if it were up to the director? You're asking for an order of mandamus, ordering the Department of Corrections to sign this form. And the director is saying you're asking me to sign something I don't believe is true. You're forcing me to do that if you're successful. That doesn't make sense. That's not what the law does. The law says, the statute says, if a piece of paper is filed, send it on to another agency. If you refuse to send it on, we, the court, can order you to send it back. But the law doesn't say if you disagree with the conclusion that the form is asking for, you must sign it anyway. Well, they ask to certify or verify. They don't say if you disagree, state your reasons for such. But you're saying sign it whether you agree or disagree. And the board will review it as a whole, and the application as a whole. That's the purpose of the board, and that was the grant of authority that the statute gave to them. Well, it just seems to me that if the form said, was this person a law enforcement officer, yes or no, and the box was check no and signed, then you would have a point that the agency could then decide whether they're going to issue the permit, based upon what the Department of Correction said. But they didn't ask the director yes or no. They said he is or she is a law enforcement officer. He apparently is saying she wasn't. I'm not signing it. I don't see the difference, though. It's a verification. It is a yes or a check box, yes or no. That's why we have lawsuits. Anything further? Nothing further. Thank you. Thank you very much. The court would like to thank the attorneys for a fine job on briefing this issue. It's an interesting proposition. We will take the matter under advisement, and the court will stand in recess.